The Chicago and Rock Island Railroad Company,

*v.*

The Northern Illinois Coal and Iron Company of La Salle

Errors — *assignment that court overruled motion for new trial, what may be urged under.* Under the assignment of error, that the court refused to grant a new trial, plaintiff in error may urge that the court admitted improper, or rejected proper evidence ; gave improper, or refused proper instructions ; the improper modification of instructions ; the evidence fails to sustain the verdict, etc.; these all being grounds for a new trial.

2.   Evidence — *its weight a question for the jury.* When evidence is conflicting the jury have the right to weigh it, and give credit to such as they deem cred-

ible. And having done so, their verdict will not be disturbed, unless the evidence is clearly against the finding.

3. Damages — *the measure of.* The measure of damages is the value of the property, to the purchaser, and not the use or profit it was yielding to the former owner. Nor should its value to the purchaser be reduced, because it would cost the owner any amount of money to keep or otherwise dispose of it.

Appeal from the Circuit Court of La Salle county ; the Hon. M. E. Hollister, Judge, presiding.

This was an action of assumpsit, commenced by the Northern Illinois Coal and Iron Co. of LaSalle, against the Chicago and Rock Island Railroad Co., to recover payment for water furnished by plaintiff to defendant. It appears from the evidence, that an arrangement was made by the agents of the two companies, that defendant should complete a wall partly constructed, to secure an embankment, for which they were to have the use of the waste water, drawn from plaintiff's coal shaft, as the agent of plaintiff testifies, for one year, and the agent of the defendant testifies, that for the erection of the protection wall defendant was to have the water, for their engines, as long as they wished, without charge. He thinks the contract was made in 1855, or in 1856 ; plaintiff's agent thinks it was perhaps in 1857. The defendant erected the wall, and built a tank, and used the water. Other witnesses also fix the time of erecting the tank as late as in 1857. After the first year, defendant switched the coal cars of plaintiff at half the price that they had previously charged. At first they charged, it appears from the evidence, one dollar for switching each car, but plaintiff's agent testifies that he threatened to cut off this water, after the year expired, unless they would reduce the price to fifty cents, which they did.

It appears, that they switched from six to eight cars per day, for plaintiff. Afterwards defendant presented a bill for the rent of a lot of ground in Chicago, used by plaintiff as a depot for storing their coal. The charge was forty dollars per month, as rent, for the lot. The question as to pay for the use of the water then arose again, and the matter seems to have

been adjusted by receipting the bills for rent and the use of the water, one balancing the other. Plaintiff ceased to use the coal yard after April, 1860; nor did they use it afterwards up to June, 1861. After the year 1858, defendant did no more switching for plaintiff.

The evidence shows that the use of the water, to defendant, was worth from thirty to fifty dollars per month. The agreement was verbal, never having been reduced to writing; and the agents who made the arrangement agree, that there was no contract made for the payment of any money for the use of the water. Nor does any witness testify to such an agreement.

On this evidence, the jury found a verdict in favor of plaintiff, for $1,000; whereupon defendant entered a motion for a new trial, which the court overruled, and rendered judgment on the verdict. To reverse which defendant brings the case to this court, by appeal, and assigns the following errors:

1. The court erred in admitting improper and incompetent evidence offered by said plaintiff below.

2. The court erred in excluding proper and competent evidence offered by said defendant below.

3. The court erred in overruling said motion for a new trial.

4. The court erred in overruling said motion in arrest of judgment.

5. The court erred in rendering judgment in manner and form aforesaid.

Messrs. Glover, Cook & Campbell, for the Appellant.

Messrs. Bull & Nash, for the Appellee.

Mr. Chief Justice Walker delivered the opinion of the Court:

Under the general assignment of error, that the court should have granted a new trial, the plaintiff in error may urge the rejection of proper and the admission of improper evidence. Also, the giving of improper and the refusal of proper instructions, and that the evidence does not sustain the verdict. These

are all grounds for granting a new trial, and need not be specifically enumerated, but are embraced in the general assignment of error that the court refused to grant a new trial.

It is insisted, in favor of a reversal, that the evidence fails to sustain the finding of the jury. Loomis testifies, that appellant under the contract was to finish the protection wall, and erect their tank, and have the use of the water pumped into the tank by appellee, for one year, as a compensation for the expense of erecting the wall. On the other hand, Coulogue testifies, that appellant was to construct the wall and build the tank, and have therefor the use of the water as long as they desired. In this contrariety in the evidence of the persons who made the contract, it was a question for the jury to determine, from all of the circumstances, to whom they would give the credit.

In support of Loomis' evidence is the fact that, after the expiration of the year, and a difference had arisen as to the right to use the water by appellant, they reduced the price of switching appellee's coal cars, from a dollar to fifty cents each, being only one-half of the previous charge. And afterwards, when appellee made other arrangements, by which they did not require appellant to switch their cars, and an account was presented for the rent of a lot in Chicago, used by appellee to store coal, at a charge of forty dollars per month, a claim for rent for the water was made, and the matter was adjusted by the charge for supplying water settling the account for the rent of the lot. And mutual receipts were passed between the parties. This occurred in the winter of 1859. These circumstances seem strongly to corroborate Loomis' version of the contract. No other motive is perceived for the reduction of the price of switching the cars and receipting the account for the rent of the lot, in consideration of the supply of water. Otherwise they would certainly have insisted upon Coulogue's view of the contract. We are therefore of the opinion that the jury were warranted in finding the verdict.

Nor is it an answer to say that the water was going to waste, and was applied to no use by appellee. The true question is,

what was the value of the water to appellant? That is the true measure of the damages in the absence of a special contract. *The Chicago South Branch Dock Co.* v. *Dunlop*, 32 Ill. 207. In this case the jury has found there was not a special agreement extending beyond one year, and after that time the damages would have to be measured by the value of the use of the water by appellant. We think the evidence shows that the wall and tank were built with the consent but not at the request of appellee. And if so, it is a matter of no consequence to inquire what it would have cost to convey this water away by a drift. These were questions outside of the case, and we cannot see that such evidence could have shed any light on the issues then before the jury. The water was of use to appellant, they appropriated it, and thereby rendered themselves liable to pay what it was reasonably worth.

It is insisted that the court erred in not permitting Young to testify as to the cost of finishing the wall and constructing the tank. This evidence was called for on the cross-examination of the witness, and it had no reference to any portion of his testimony in chief. At that time it was not their right to call out this evidence, and it could only have been done as rebutting evidence, except by the exercise of the discretionary power of the court. On cross-examination the court is not bound to permit an examination on questions about which no evidence was given by the witness in his examination in chief. If this evidence was material, appellant should have called the witness as his own, when he came to rebut appellee's evidence. But Johnson, appellant's engineer, gives the substance of what was intended to have been proved by Young.

After a careful examination of the entire record, we can only say, that the evidence was conflicting, but the jury were nevertheless warranted in finding as they did, and we feel ourselves unauthorized to disturb the verdict. Nor do we perceive any error for which the judgment of the court below should be reversed, and it is therefore affirmed.

*Judgment affirmed.*